IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


| | | |
|---|---|---|
| QUAMAINE BROOKS, | ) | CASE NO.  1:02CV1416 |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | Judge John R. Adams |
| | ) | |
| DAVID BOBBY, WARDEN, | ) | |
| | ) | |
| Respondent. | ) | <u>MEMORANDUM OF OPINION</u> |


On July 22, 2002, Quamaine Brooks, petitioner, filed a petition for writ of habeas corpus

pursuant to 28 U.S.C. § 2254.  He challenges his convictions and sentence for felonious assault

in violation of Ohio Revised Code ("O.R.C.") § 2903.11, and child endangering in violation of

O.R.C. § 2919.22.  On October 4, 2002, the Respondent filed his Answer/Return of Writ (Docket

No. 9), to which the Petitioner filed his Traverse on January 9, 2003 (Docket No. 20).

On August 19, 2003, a Magistrate Judge issued a Report and Recommendation in which

he recommends that the petition be granted and that the Petitioner be afforded a new trial, or

alternatively a new direct appeal (Docket No. 27).  On September 2, 2003, the Respondent filed

Objections to the Magistrate Judge's Report and Recommendation (Docket No. 29), to which the

Petitioner responded on September 10, 2003 (Docket No 30).

The Court concludes that an evidentiary hearing is not necessary.  See 28 U.S.C. § 2254; Rule 8(a) of the Rules Governing 2254 Proceedings.  For the following reasons, the Court rejects the Magistrate Judge's recommendation, and the petition is hereby DENIED.

## I. FACTS

### A. Evidence At Trial

This case arises out of a "shaken baby" attack against Angelique Stratford, who was approximately three months old at the time of the crimes.  Petitioner Quamaine Brooks is the victim's uncle.  His co-defendant at trial was his mother Geraldine Brooks, the victim's maternal grandmother.  (Trial Tr. at 221.)

In late February 1998, Angelique's aunt, Stephanie Stratford, brought her to Defendant Geraldine Brook's home for a prolonged stay.  (Trial Tr. at 215.) The home is a duplex.  In the downstairs portion, the Petitioner and Geraldine Brooks lived with Elaine Brooks, the Petitioner's aunt, Minnie Brooks, the Petitioner's grandmother, and Michael Brooks, the Petitioner's cousin (Elaine's son).  In the upstairs portion, Rasheed Brooks, the Petitioner's brother, lived with his common-law wife, Wadell Jefferson, and their three young children.

On March 7, 1998, Geraldine returned Angelique to her parents' home.  Her father, Donald Stratford, noticed that Angelique had scratches on her body.  She was listless and non-responsive, her eyes seemed unable to focus, and she was experiencing twitching in her legs.  Donald called a taxi and took her to a nearby emergency room.  (Trial Tr. at 249-53.)

The prosecution produced medical testimony regarding Angelique's condition.  She suffered multiple skull fractures accompanied by swelling and edema within the brain.  The brain damage was massive, permanent, and debilitating.  Her treating physicians testified that such

-2-

injuries could only be caused by significant force and trauma, most likely vigorous shaking, and the injuries were well beyond what would be expected from an ordinary fall.  In addition, the injuries were suffered more than twenty-four hours before Angelique was taken to the hospital. (Trial Tr. at 118-35, 147-150, 156-68, 188-91.)

The primary testimony implicating the Petitioner came from Michael Brooks, who was eight years old at the time of the crimes.  Detectives conducted an investigatory interview of Michael, during which he demonstrated with a doll what he saw Quamaine do to Angelique. After the interview, the Petitioner was arrested.  Michael testified at trial that a day or two prior to Angelique returning home, he saw Quamaine hold Angelique upside down, punch her in the side, and drop her onto a couch. (Trial Tr. at 71-74, 102-06, 386.)

Both Defendants testified and denied any knowledge of how Angelique sustained her injuries. Quamaine stated that he was at work or school during the relevant time period, but his testimony was contradicted by his school and employment attendance records.  (Trial Tr. At 408.)  The jury found the Petitioner guilty of felonious assault and child endangering, and Geraldine Brooks guilty of child endangering.  (Docket No. 9, Ex. 2.)

B.  The Alleged Conflict of Interest

As further shown below, at issue is the joint representation of the Petitioner and his co-defendant, Geraldine Brooks, by attorney Brett Jordan.  Prior to trial, the trial judge advised the parties of the risks of  conflicts of interest arising out of a joint representation:

> Court:    Do you know that and do you understand that by having the same
>            attorney, there may be a fact favorable to you, Mrs. Brooks, but because of
>            it, it would be unfavorable to your husband [sic – son]?  I don't know
>            what your attorney would choose to do in that instance.
>                Do you each understand that by having one attorney, you may be
>            giving up some of your own individual rights?  No rights in the terms of

-3-

constitutional but factors that may inure to your benefit even though they
might hurt the other one.  Do you understand that?

Both Defendants answered "yes".

Court:      And it's my understanding that you choose to each have the same
            attorney?

Both Defendants answered "yes".

Court:      Now Mr. Jordan, I assume that based on your competency that
            you have gone over conflict of interest with your clients and that
            you have kept that in mind when reviewing the evidence as you
            may understand the evidence to be?

Jordan:     I have, your Honor.

Court:      However, you and I both know by experience that the evidence that
            comes out in the courtroom isn't always as we anticipate it is.

Jordan:     That's correct.

Court:      You understand that you know if [sic] later shown that there was a
            conflict of interest that inured to one of your clients' detriments, that is a
            grave condition and a very serious matter under the rules of ethics?  You
            understand that, and you are aware of taking that risk?  You understand
            that, Mr. Jordan?

Jordan:     Yes, I understand that, your Honor.

(Trial Tr. at 16-18.)  The trial continued with the joint representation of Geraldine and

Quamaine Brooks.

      After the close of the prosecution's case, the defense's first witness was Wadell

Jefferson.  As stated above, she lived in the upstairs portion of the home with Rasheed Brooks,

the Petitioner's brother, and their three children.  (Trial Tr. at 437, 454.)  Initially, Geraldine

Brooks told investigators that Wadell Jefferson said Michael had dropped or hit the baby.  (Trial

Tr. at 350, 398-99.)

In what from the record was a change of position, Wadell now was going to raise Elaine

Brooks as a potential perpetrator instead of Michael.  Elaine often would watch Angelique while

Geraldine went to work.   (Trial Tr. at 355-56.)

During her testimony, defense counsel asked Wadell, "During that time period [February

1998], did you have an occasion to experience something unusual with Elaine?" (Trial Tr. at

439.)  The prosecution objected, and the following exchange occurred outside the presence of the

jury.

> Jordan:     Your Honor, at this time she is going to testify that in February of 1998
> that Elaine suffered some kind of a mental breakdown or what not, that
> they came up to her apartment and that she hurt her – hurt her children and
> she had to be taken away by the police and the ambulance to seek care and
> that she was treated and then returned back to the house just prior to the
> time period of February 22nd through March 7th.  And I believe at this time
> Elaine has been there at the house the whole time that Angelique was
> present during the time and, again, that my theory is that Elaine could
> have been the one who injured the child.
>
> Court:     Doesn't this kind of conflict with your other client's rights because if
> this is true and Geraldine knew of Elaine's violent tendency and Elaine
> did in fact hurt this baby, wouldn't that really make your client guilty of
> child endangering?  Isn't this a conflict between your clients here, Mr.
> Jordan, just the kind I questioned all throughout the pendency of this case?
>
> Jordan:     Your Honor, she is going to question – she gives Elaine medication and
> she's fine on the medication. . . .
>
> Naiman:[1]  First of all, if I heard the – did you state that she is going to say that
> Elaine hurt those children?  Is that what you said?
>
> Jordan:     Yes.
>
> Naiman:     I'd like to know what basis are you – I mean, all you showed me
> was a copy of a CFS report that indicated that Wadell said that Elaine said
> she was going to hurt the babies, which was hearsay.  Wadell never

---

[1]      Deborah Naiman prosecuted the case.

reported that her children were hurt.  So, I would say first of all that this is perjuring herself because she is making it more serious than it is and the statement was Elaine said she was going to do something, not that she did hurt anybody.

Court:      Okay, that's number one.  Do you have any other objection to this testimony coming in and if so state your objection, please.

Naiman:      Well, it is – well, it is going to be a conflict especially as to Geraldine, not so much as to Quamaine.  And it's my understanding that you had this witness list from the beginning and you knew what she was going to testify to.

Court:      Which is a total conflict to your client, right, which puts me in a position of possibly granting a mistrial here because you cannot put her on to make the jury believe that she is a dangerous person and then somehow absolve you by saying your client is going to say that I trusted her.  That is ludicrous.

Jordan:    BJ said she trusted her also.

Court:      I don't care.  It's a conflict of interest, number one.  Number two, if you want to show Elaine's a violent person, bring on Elaine.  You are not going to get into hearsay.  Everything you have gotten is hearsay and quite frankly I didn't hear – I don't know why I didn't hear an objection earlier.  Sustained.

(Trial Tr. at 440-43.)

Following this exchange, Wadell was precluded from testifying in any manner that would have demonstrated a violent tendency in Elaine Brooks.

C.  Procedural History

A grand jury in the Court of Common Pleas for Cuyahoga County, Ohio indicted the Petitioner on one count of attempted murder, one count of felonious assault, and one count of child endangering arising out of the attack on Angelique.  The Petitioner's mother, Geraldine Brooks, was indicted on one count of child endangering.  (Docket No. 9, Ex. 1.)

On November 9, 1998, a jury convicted the Petitioner of felonious assault and child

-6-

endangering.  (Docket No. 9, Ex. 2.) On November 19, 1998, he was sentenced to seven years imprisonment for felonious assault, and four years imprisonment for child endangering, to be served consecutively.  (Docket No. 9, Ex. 3.)

On December 18, 1998, the Petitioner appealed his convictions and sentence to the Eight District Court of Appeals.  (Docket No. 9, Ex. 4.) He claimed that the trial court erred by permitting the jury to deliberate to verdict with only eleven jurors, and, relatedly, that his counsel rendered ineffective assistance by waiving the requirement of twelve jurors.[2]  He also alleged that his convictions should be set aside as being against the manifest weight of the evidence.  On April 10, 2000, the Eighth District affirmed.  (Docket No. 9, Ex. 7.)

On May 11, 2000, the Petitioner appealed to the Ohio Supreme Court raising the same grounds for relief.  (Docket No. 9, Ex. 8.) The Ohio Supreme Court rejected the appeal for not meeting the formal filing requirements.  (Docket No. 9, Exs. 9-11.) On October 2, 2000, he filed a Motion For Delayed Appeal, which was denied on November 22, 2000.  (Docket No. 9, Exs. 12-13.)

In addition, on July 7, 2000, the Petitioner filed an Application For Reopening his appeal pursuant to Ohio R. App. P. 26(B) for alleged ineffective assistance of appellate counsel. Specifically, he alleged that appellate counsel was ineffective:  (1) by not arguing during direct appeal that the trial counsel rendered ineffective assistance because he had an actual conflict of interest in representing both the Petitioner and his mother, and therefore should have withdrawn from the case and sought a mistrial; and (2) by not arguing during direct appeal that the trial

---

[2]      During trial, one juror was released due to illness, and the parties waived the requirement of twelve jurors.

court erred in not ordering a mistrial because of the conflict.  (Docket No. 9, Ex. 14 at 2-3.)  On August 14, 2001, the Eight District denied the Application For Reopening.  (Docket No. 9, Ex. 15.)

The Eight District rejected the arguments for ineffective assistance of appellate counsel. The court concluded that if Wadell's statements were admissible, an actual conflict of interest would have existed.  The court, however, accepted the trial court's exclusion based on hearsay, which eliminated the purported conflict.  In addition, the court ruled that it was reasonable for appellate counsel not to raise the conflict issue on direct appeal due to the trial court's hearsay ruling.  Accordingly, there was no ineffective assistance of appellate counsel.  (Docket No. 9, Ex. 15 at 8-11.)

On September 27, 2001, the Petitioner appealed the denial of the Application For Reopening, which the Ohio Supreme Court denied on December 5, 2001 as not involving a substantial constitutional question.  (Docket No. 9, Exs. 16-19.)

On July 22, 2002, the Petitioner filed the current petition for writ of habeas corpus (Docket No. 1).  He raises the following grounds for relief.

1.  Trial counsel was ineffective and should have withdrawn from the case due to an actual conflict of interest.  Counsel did not present probative evidence that would have significantly benefitted Mr. Brooks because it would have damaged the defense of his codefendant, in contravention of Quamaine Brooks' Sixth Amendment right to conflict-free counsel.

2.  The trial court erred when it declined to declare a mistrial due to the actual conflict of interest in trial counsel's representing both codefendants, in contravention of Quamaine Brooks' Sixth Amendment right to conflict-free counsel.

3.  When an appellate attorney fails to raise numerous, meritorious issues in a criminal defendant's direct appeal of a conviction, and instead raises weak, unconvincing issues, the attorney renders constitutionally

inadequate assistance, in contravention of the Fourteenth Amendment to
the United States Constitution.

4.     When after receiving evidence of ineffective assistance of appellate
       counsel, the state appellate court refuses to reopen the defendant's appeal,
       the court violates the Due Process and Equal Protection Clauses of the
       United States Constitution.

The matter was referred to a Magistrate Judge for a Report and Recommendation.  On

August 19, 2003, after full briefing by the parties, he recommended that the petition be granted,

and that the Petitioner be granted a new trial, or alternatively a new direct appeal.  The

Magistrate Judge concluded that trial counsel rendered ineffective assistance in proceeding with

the joint representation despite an actual conflict of interest.  In addition, the trial court erred by

not adequately inquiring into the conflict, nor declaring a mistrial in view of the conflict, nor

seeking a proper waiver.  Appellate counsel also rendered ineffective assistance by not raising

conflict issues on direct appeal.  (Docket No. 27, Magistrate Judge's Report and

Recommendation at 26-27.)

## II.  LAW

### A.  General Standards of Habeas Review

Collateral relief from a conviction or sentence is available if errors created a fundamental

defect at trial resulting in a complete miscarriage of justice, or were so egregious as to violate

due process.  See Reed v. Farley, 512 U.S. 339, 348, 353 (1994), citing, Hill v. United States,

368 U.S. 424, 428 (1962); Zagi v. United States, 90 F.3d 130, 133-34 (6th Cir. 1996), cert.

denied, 117 S.Ct.994 (1997); Gall v. United States, 21 F.3d 107, 109 (6th Cir. 1994); Ward v.

United States, 995 F.2d 1317, 1319 (6th Cir. 1993); United States v. Ferguson, 918 F.2d 627, 630

(6th Cir. 1990).

-9-

On April 26, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ( the "Act" or the "AEDPA"), Pub. L. 104-132, 110 Stat. 1214 (1996).  Title 28 U.S.C. § 2254, as amended by the AEDPA, provides in relevant part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based upon an unreasonable determination of facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d) (as amended).  With respect to paragraph (d)(1), the phrase "clearly established Federal law, as determined by the Supreme Court of the United States" refers to Supreme Court holdings, not dicta.  In addition:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 120 S. Ct. 1495, 1523 (2000); see also Miller v. Francis, 269 F.3d 609, 613-14 (6th Cir. 2001), cert. denied, 535 U.S. 1011 (2002); Brumley v. Wingard, 269 F.3d 629, 637-38 (6th Cir. 2001); Magana v. Hofauer, 263 F.3d 542, 546 (6th Cir. 2001); Campbell v. Coyle, 260 F.3d 531, 539 (6th Cir. 2001), cert. denied, 535 U.S. 975 (2002).

State court factual determinations are "presumed to be correct," and the party seeking habeas relief has the burden of rebutting this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); Bailey v. Mitchell, 271 F.3d 652, 656 (6th Cir. 2001), cert. denied, 536 U.S. 911 (2002); Brumley, 269 F.3d at 637.  This presumption applies to factual findings of a state appellate court made based on the trial court record. Brumley, 269 F.3d at 637.  However, the presumption does not apply to mixed questions of law and fact.  Coe v. Bell, 209 F.3d 815, 823-24 (6th Cir.), cert. denied, 529 U.S. 1084 (2000).

B.  Ineffective Assistance of Counsel

Grounds for relief one, three, and four all arise out of alleged ineffective assistance of counsel.  The standard for determining whether counsel was ineffective was set forth by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984).  "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  Id. at 686; see also United States v. Sanchez, 960 F.2d 610, 612 (6th Cir. 1992).  "When a true adversarial criminal trial has been conducted — even if defense counsel may have made demonstrable errors — the kind of testing envisioned by the Sixth Amendment has occurred."  United States v. Cronic, 466 U.S. 648, 657 (1984).  The Court does not view the purported errors in isolation.  Rather, the Court views the errors within the context of the entire record to determine whether the errors, taken as a whole, were so egregious as to undermine the fundamental fairness of the trial.  Lundy v. Campbell, 888 F.2d 472-73 (6th Cir. 1989), cert. denied, 495 U.S. 950 (1990).

The analysis of counsel's performance is two-prong:

-11-

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed to the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant can make both showings, it can not be said that the conviction . . .  resulted from a breakdown in the adversary process that renders the result unreliable.

Strickland, 466 U.S. at 687; see also West v. Seabold, 73 F.3d 81, 84 (6th Cir.), cert. denied, 116 S. Ct. 2569 (1996); Fields v. Bagley, 275 F.3d 478, 484 (6th Cir. 2001); Buell v. Mitchell, 274 F.3d 337, 359 (6th Cir. 2001); Greer v. Mitchell, 264 F.3d 663, 674 (6th Cir. 2001);  Ward v. United States, 995 F.2d 1317, 1321 (6th Cir. 1993); United States v. Morrow, 977 F.2d 222, 229 (6th Cir. 1992), cert. denied, 508 U.S. 975 (1993).

The performance inquiry is whether counsel's assistance was reasonable considering all the circumstances.  Strickland, 466 U.S. at 688.  The Court "must indulge a strong presumption" counsel's assistance was reasonable, and avoid the "distorting effects of hindsight".  Id. at 689; see also Stanford v. Parker, 266 F.3d 442, 454 (6th Cir. 2001).  A claim of unreasonable performance must be evidenced by more than unsupported generalizations.  Vick v. United States, 730 F.2d 707, 708 (11th Cir. 1984).  Rather, a petitioner must point to specific acts or omissions that fell outside the wide range of competent assistance.  Patel v. United States, 19 F.3d 1231, 1235 (7th Cir. 1994).  Counsel's performance is to be measured at the time of the representation.  Stanford, 266 F.3d at 454.  Furthermore, the Petitioner bears the burden of overcoming a presumption that the challenged conduct might be considered sound trial strategy.  Miller v. Francis, 269 F.3d 609, 615 (6th Cir. 2001), cert. denied, 535 U.S. 1011 (2002).

Prejudice is demonstrated when there is a reasonable probability that but for counsel's

errors, the result would have been different. A "reasonable probability" is one sufficient to undermine confidence in the outcome. Strickland, 466 U.S. at 694. The Court determines prejudice with attention to whether the result of the proceeding was fundamentally unfair or unreliable. Lockhart v. Fretwell, 506 U.S. 364, 369 (1993). "Unreliability does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." Id. at 372.

Appellate counsel need not raise every colorable claim on appeal. Jones v. Barnes, 463 U.S. 745, 753-54 (1983). However, the Strickland standard applies to conduct by appellate counsel. See Mapes v. Coyle, 171 F.3d 408 (6th Cir. 1999). In Mapes, the Sixth Circuit listed eleven considerations in analyzing performance of appellate counsel. The Sixth Circuit, however, cautioned that the list is not exhaustive and not meant to require a "score" type of analysis. Id. at 427-28. Relevant Mapes considerations here include whether the omitted issues were significant and obvious, or stronger than those presented; whether there was contrary authority to the omitted issues; whether the trial court's findings were subject to deference on appeal; and whether the decision to omit the relevant issues was an unreasonable one which only an incompetent attorney would adopt. See Mapes, 171 F.3d at 426-27.

In addition, if the state courts have considered a claim for ineffective assistance of counsel, the federal court review of the claim is governed by 28 U.S.C. § 2254(d)(1). Thus, the federal court does not render an independent judgment and application of the Strickland test, but rather determines whether the state court decision is contrary to or involved an unreasonable application of the Strickland test. Bell v. Cone, 535 U.S. 685, 698-99 (2002).

C.  Conflict of Interest

Trial counsel's alleged conflict of interest is the central dispute in all four grounds for relief.  The Sixth Amendment right to assistance of counsel contemplates that such assistance be unimpaired by conflicts of interest. The joint representation of two co-defendants, however, is not a *per se* violation of the right to effective assistance of counsel.  Glasser v. United States, 315 U.S. 60, 70 (1942).

This Court categorizes the conflict of interest case law into three scenarios.  The first scenario is when the attorney or one of the parties objects to the joint representation.  The attorney representing multiple criminal defendants is in the best position to determine whether conflicts of interest exist or might develop.  Cuyler v. Sullivan, 446 U.S. 335, 347 (1980), citing, Holloway v. Arkansas, 435 U.S. 475, 484 (1978).  Therefore, when an objection is made to joint representation, a trial judge must take adequate steps to ascertain whether the risks of a conflict exist sufficiently to warrant appointment of separate counsel.  Holloway, 435 U.S. at 484.  When a trial court improperly requires joint representation over timely objections, reversal is automatic without an independent showing of prejudice to a defendant.  With an unwilling attorney or client, the representation is most certainly undermined, thereby constituting ineffective assistance without a specific showing of prejudice as typically required under Strickland. Holloway, 435 U.S. at 488-89 (1978).  Such an unconstitutional multiple representation is never harmless error.  Sullivan, 446 U.S. at 349.

The second scenario occurs when the attorney and joint clients remain silent on the joint representation.  Absent an objection, a trial court need not inquire on any potential conflict, but rather may presume either that the multiple representation entails no risk, or that the lawyer and

-14-

clients accept the risks and wish to proceed with the joint representation anyway.  Sullivan, 446 U.S. at 346-47.  A defendant who raised no objection at trial must demonstrate more than in the first scenario.  He must demonstrate that an actual conflict of interest exists and adversely affected his lawyer's performance.  Upon such a showing, Strickland prejudice is again presumed. Thus, a conviction is overturned because of the negatively affected representation, without an additional and specific showing that the trial result was somehow unreliable or the outcome would have been different.  Sullivan, 446 U.S. at 348; see also Mickens v. Taylor, 535 U.S. 162, 172-73 (2002); Thomas v. Foltz, 818 F.2d 476, 480 (6th Cir.), cert. denied, 484 U.S. 870 (1987).

The third scenario is when the joint defendants have waived potential conflicts of interest.  In general, the right to counsel can be waived, but whether there was a proper waiver should be clearly determined by the trial court upon the record.  Glasser v. United States, 315 U.S. 60, 71 (1942).  "A defendant may waive any potential conflicts of interest and elect to continue with dual representation."  United States v. Hall, 200 F.3d 962, 964 (6th Cir. 2000).

The effect of such a waiver, however, remains unclear in the Sixth Circuit.  In Hall, for example, the court stated:   "This waiver, however, does not bind the courts."  Nevertheless, there was no discussion of the specific circumstances of the waiver, but only a mere recognition that a defendant's right to counsel of choice must be balanced against the trial court's independent duty to ensure that a defendant has an effective advocate.  Hall, 200 F.3d at 965, citing, Wheat v. United States, 486 U.S. 153, 159 (1988).

In unpublished table decisions, however, other panels of the Sixth Circuit have been more strict in enforcing waivers.  In Miller v. United States, 106 F.3d 401 (table), 1996 WL

-15-

742284 at *3 (6th Cir. December 20, 1996), the court stated:

> [Defendant] Miller validly waived his right to separate counsel and cannot now claim that joint representation amounted to ineffective assistance of counsel.  Having made this ruling, we find it unnecessary to decide whether an actual conflict of interest arose.

Thus, the finding of a valid waiver ended the analysis without any consideration of actual conflicts of interest.  See also United States v. Turner, 60 F.3d 829 (table), 1995 WL 399078 at *1 (6th Cir. July 6, 1995), cert. denied, 516 U.S. 864 (1995) (applying the same rule to joint representation during sentencing).  Similarly, in United States v. Micou, 48 F.3d 1220 (table), 1995 WL 99168 at *5 (6th Cir. March 8, 1995), the court held that a defendant forfeited his claim that his attorney's actual conflicts of interest deprived him of effective assistance when he waived the conflicts.  Quoting United States v. Lowry, 971 F.2d 55, 63-64 (7th Cir. 1992), the court stated:  "To hold otherwise would be to render the waiver meaningless; a defendant would lose nothing by waiving his right and sticking with counsel who had a conflict, since he could always allege 'ineffective assistance' if convicted."

Wheat, supra (relied upon by Hall) addressed more generally the analysis of waivers of conflict of interest. First, there is no flat rule that the waiver must be accepted in view of the Court's independent duty to ensure that criminal trials are conducted within ethical standards and constitutional requirements of fairness.  Wheat, 486 U.S. at 160.  Upon finding an actual conflict of interest, the trial court "may" decline a waiver.  Id. at 162, emphasis added.  Unfortunately, trial courts are often called upon to address conflicts "not with the wisdom of hindsight after the trial has taken place, but in the murkier pre-trial context when relationships between parties are seen through a glass, darkly."  Accordingly, trial courts are afforded wide latitude in deciding whether to decline a waiver.  Id. at 162-63.  Wheat concluded:

> The District Court must recognize a presumption in favor of petitioner's counsel of choice, but that presumption may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict. The evaluation of facts and circumstances of each case under this standard must be left primarily to the informed judgment of the trial court.

Id. at 164.

## III. ANALYSIS

### A. Waiver of Conflict of Interest

The gravamen of the issues is whether the purported conflict of interest warrants reversal of the conviction. The Respondent argues in his Objections to the Magistrate Judge's Report (for the first time) that the Petitioner's pretrial waiver of separate counsel forecloses relief. Because it was not briefed prior to the Report and Recommendation, the Magistrate Judge offered no analysis on this issue. His *only* reference to waiver comes at the end of his opinion, where he states that the trial court "did not . . . seek a knowing, intelligent, and voluntary waiver from Petitioner." (Magistrate Judge's Report and Recommendation at 26.)

The Court notes that the Magistrate Judge erroneously characterizes the non-existence of a waiver. The trial judge in fact obtained a waiver on the record. (See Trial Tr. at 16-18.) The Court is troubled by the potential that the Magistrate Judge's recommendation is based upon an inaccurate reading of the record.

As a threshold issue, the Petitioner asserts that the conflict waiver should not be considered by the Court because the argument was not made prior to the Magistrate Judge's decision. The Respondent, therefore, waived the argument.

Waiver in this context is discretionary. Had the Respondent never even mentioned the conflict waiver, this Court is not barred from addressing the issue. Arguments not properly

-17-

raised in objections to a Magistrate Judge's recommendation can be waived.  Thomas v. Urn, 474 U.S. 140, 155 (1985); United States v. Walters, 638 F.2d 947, 950 (6th Cir. 1981).  Similarly, arguments made for the first time in objections to a Magistrate Judge's recommendation, as is the case here, also can be waived.  Ward v. United States, 208 F.3d 216 (table), 2000 WL 282648 at *1 (6th Cir. March 13, 2000), cert. denied, 531 U.S. 1015 (2000); see also Paterson-Leitch Company, Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985, 990-91 (1st Cir. 1988).  However, though often enforced, this waiver rule is not jurisdictional and failure to raise arguments timely may be excused in the interests of justice.  Souter v. Jones, 395 F.3d 577, 585 (6th Cir. 2005).

The Court cannot ascertain why neither the parties nor the Magistrate Judge raised the conflict waiver earlier.  As stated above, the Magistrate Judge went so far as to state, incorrectly, that the trial court never sought a waiver.  The interests of justice require this Court to step in and correct such a broad oversight of what is truly a central issue.  In addition, the state of the law governing the effect of conflict waivers is uncertain both with respect to the Supreme Court and the Sixth Circuit.  Therefore, the interests of justice also warrant a discussion given this ambiguous state of the law.  Accordingly, the Court will consider the validity and effect of the conflict waiver.

The first issue is whether the waiver was knowing, voluntary, and intelligent. Nothing in the record indicates that is was not.  The Petitioner, in his response to the Respondent's objections, never argues the point.  The trial judge specifically inquired as to whether the Petitioner and his co-defendant understood the potential for conflicts, and both answered "yes". They chose to retain joint counsel. Accordingly, the Court finds that the waiver was knowing,

voluntary, and intelligent.

The Petitioner argues that he never actually waived conflict-free representation because at the time of the waiver, the conflict was only potential.  Later during trial, when an actual conflict presented itself, no waiver was obtained.  To carry the Petitioner's argument to its logical conclusion, a trial judge would have to obtain a new waiver every time new evidence of a conflict arises.  There is no such requirement.  As the Supreme Court acknowledged in <u>Wheat</u>, <u>supra</u>, the trial court must decide whether to accept a waiver "in the murkier pre-trial context". 486 U.S. at 162.

The waiver was sufficient to encompass all conflicts, actual or potential, present or future.  The trial judge's warning was clear, when he stated that there may arise "factors that may inure to your benefit even though they might hurt the other".  He verified that counsel had explained the conflicts issue to his clients, and he repeated the warning that if it was "later shown there was a conflict of interest that inured to one of your clients' detriments, that is a grave condition".  The Petitioner cannot claim in good faith that he did not waive actual conflicts that might arise later during the trial.  The waiver is valid.

Having found a valid waiver, the Court determines its effect.  As demonstrated by the case law cited above, at least one panel of the Sixth Circuit determined that conflict waivers do not bind the courts at all.  Other panels have come to essentially the opposite conclusion, that the waiver is to be enforced strictly, and that ends the analysis.

Given this split in authority, the Court falls upon the more general considerations stated by the Supreme Court in <u>Wheat</u>.  Thus, there is presumption in favor of a defendant's choice of counsel, but a trial judge may reject a waiver even based upon a potential for a conflict of

interest.  In addition, a trial judge must be afforded wide latitude and decide whether to accept or

decline a waiver based upon the specific circumstances of the case.  Wheat, 486 U.S. at 162-64.

Here, the trial judge did not err in accepting the conflict waiver.  He warned the parties of

the potential for a conflict of interest, although at that time the evidence had not revealed an

actual conflict.  His pretrial inquiry was adequate to make an informed decision as to whether a

joint representation could proceed.  Relatedly, trial counsel did not provide ineffective assistance

in accepting the joint representation.  Counsel verified to the trial court that he had discussed

conflicts issues, and to the extent such discussion may have been deficient, the trial court

provided adequate, independent pretrial warnings.  The waiver was enforceable from the outset.

This conclusion is not altered viewing the case at the time the actual conflict arose,

during Wadell Jefferson's testimony.  The trial court forced the parties to heed the waiver.  It

was wholly within his discretion to do so.  After all, he had warned them: "Isn't this a conflict

between your clients here, Mr. Jordan, *just the kind I questioned all throughout the pendency of

this case*?"  (Trial Tr. at 441, emphasis added.)  Although he mentioned the potential for a

mistrial, it was within the judge's discretion simply to exclude the testimony.  In the same vein,

trial counsel was not ineffective by not seeking to withdraw to force a mistrial.  Given the trial

judge's decision, counsel had no alternative but to proceed.

One factor a court may consider in enforcing a waiver is the potential for

"manufacturing" a conflict to achieve an advantage.  Wheat, 486 U.S. at 163. This concern is

present here.  Investigators interviewed all members of the household, including Wadell.  She

never intimated that Elaine Brooks could have perpetrated the beating.  If anything, Wadell's

prior statements implicated Michael.  Geraldine Brooks told investigators that Wadell said

Michael dropped or hit the baby.  Now, in the midst of her trial testimony, Wadell was to

implicate Elaine.  This Court is concerned that a party could manufacture a conflict to obtain a

post-waiver mistrial when the trial is not proceeding favorably.  Here, the sudden change of

position justifies the trial judge's decision to exclude the offending testimony and proceed

despite the joint representation.

For the foregoing reasons, the conflict waiver is valid and binding.  Accordingly, the

Petitioner is not entitled to habeas relief because of the alleged conflict of interest.

B.  Hearsay

In addition to conflict of interest, the trial judge restricted Wadell's testimony on the

ground that it was hearsay for her to testify as to Elaine Brooks' violent tendencies.  As a

hearsay limitation, the trial judge's decision was based upon a state evidence rule.

Federal habeas corpus relief does not lie for errors in applying state law unless such

errors rise to the level of a federal constitutional violation.  Estelle v. McGuire, 502 U.S. 62, 67-

68 (1991).  Thus, habeas corpus review does not encompass state court rulings on the admission

of evidence unless there is a federal constitutional violation.  Bugh v. Mitchell, 329 F.3d. 496,

512 (6th Cir.), cert. denied, 540 U.S. 930 (2003);  Clemmons v. Sowders, 34 F.3d 352, 357 (6th

Cir. 1994); Serra v. Michigan Department of Corrections, 4 F.3d 1348, 1354 (6th Cir. 1993), cert.

denied, 510 U.S. 1201 (1994); Cooper v. Sowders, 837 F.2d 284, 286 (6th Cir. 1988).  The error

must have had a substantial and injurious effect in determining the jury's verdict, and a habeas

petitioner must establish actual prejudice from the error.  Clemmons, 34 F.3d at 357-58.

When reviewing a state court's evidentiary determination, a federal habeas court cannot

grant relief simply because it would have decided the issue differently.  Sanders v. Freeman, 221

-21-

F.3d 846, 860 (6th Cir. 2000).  Rather, relief is available only if  the evidentiary error is so egregious that it results in the denial of fundamental fairness.  <u>Bugh</u>, 329 F.3d at 512.  The scope of circumstances when fundamental fairness is violated is narrowly limited to errors that "offend some principle of justice so rooted in the traditions and conscience of our people so as to be ranked as fundamental."  <u>Bugh</u>, 329 F.3d at 512, <u>quoting</u>, <u>Seymour v. Walker</u>, 224 F.3d 542, 552 (6th Cir. 2000), <u>cert. denied</u>, 532 U.S. 989 (2001); <u>see</u> <u>also</u> <u>Coleman v. Mitchell</u>, 268 F.3d 417, 439 (6th Cir. 2001), <u>cert. denied</u>, 535 U.S. 1031 (2002).

The Magistrate Judge asserts that the states courts (trial and appellate) erred in their hearsay rulings.  The Magistrate Judge, however, applied an incorrect standard in his hearsay analysis.  He simply, and improperly, substituted his own hearsay ruling for that of the state courts.  He did not address whether the evidentiary exclusion rose to the level of a "denial of fundamental fairness".

Trial counsel's proffer of Wadell's anticipated testimony was:

> [I]n February of 1998 that Elaine suffered some kind of a mental breakdown or what not, that they came up to her apartment and that she hurt her – hurt her children and she had to be taken away by the police and the ambulance to seek care and that she was treated and then returned back to the house just prior to the time period of February 22nd through March 7th.

(Trial Tr. at 440.)  The state appellate court deemed this proffer to be "uncertain", a characterization with which the Magistrate Judge disagreed.  He concluded that the proffer was "certain and unwavering", and that the "state prosecutor muddled the record when she somehow construed the proffer as a proffer of hearsay." (Magistrate Judge's Report and Recommendation at 23.)

The Court agrees with the state appellate court, and in fact, it was defense counsel who

"muddled the record".  The Magistrate Judge reads the proffer in isolation and out of context.

When faced with the proffer, the prosecutor demanded to know what the basis was because the

current proffer was a departure from Wadell's previous statements:  "I mean, all you showed me

was a copy of a CFS report that indicated that *Wadell said that Elaine said she was going to hurt*

*the babies, which was hearsay*.  Wadell never reported that her children were hurt."  (Trial Tr. at

441-42.)  Apparently, the trial court disallowed the change of position.

In addition, although the Magistrate Judge reads the proffer as Wadell's observations, the

proffer never explicitly indicates that Wadell personally observed *anything* that Elaine did.  In

this context, hearsay depends upon the source of the information, not its substance.  The proffer

states that Wadell will testify as to certain events, but it does not state whether she observed

these events, or learned of them from what others told her after the fact.  Thus, as concluded by

the state appellate court, the proffer is indeed uncertain.

The state appellate court and the Magistrate Judge also disagree on the relevance and

materiality of Wadell's proposed testimony.  The Magistrate Judge characterizes the testimony

as "critical exculpatory evidence that, had it been admitted, could have made a difference in the

outcome of the case." (Magistrate Judge's Report and Recommendation at 18.)  In contrast, the

state appellate court noted that Wadell's proposed testimony referred to events a month earlier

than the abuse of Angelique, and related to other children.  "Thus appellate counsel would have

to establish relevancy in arguing that disallowing this evidence was an abuse of discretion."

(Docket No. 9, Ex. 15 at 10.)  In such evidentiary considerations, the state courts are entitled to

-23-

deference.[3]

The Court concludes that the exclusion of Wadell's testimony on Elaine Brooks' violence tendencies does not represent a denial of fundamental fairness.  Given Wadell's prior statements and change of position, the incompleteness of the proffer, the questionable relevance as indicated by the state appellate court, and the totality of other evidence against the Petitioner, the exclusion does not violate constitutional standards of due process.

C.  Substantive Conflict of Interest

Even assuming that the waiver is unenforceable, the alleged conflict of interest does not warrant relief.  Because the parties did not object, this case is governed by the Sullivan standard that a joint representation is unconstitutional if an actual conflict of interest adversely affected the attorney's performance.  Cuyler v. Sullivan, 446 U.S. 335, 346-49 (1980).  Here, trial counsel sought to elicit evidence that Elaine Brooks had violent tendencies.  Such evidence would have tended to exculpate Quamaine, but incriminate Geraldine.  The issue, therefore, is whether this conflict "adversely affected" counsel's performance.

To demonstrate that an actual conflict adversely affected counsel's performance, there must be "specific instances in the record" which:

> demonstrate that the attorney made a choice between possible alternative

---

[3]        The Magistrate Judge correctly states that all of the Petitioner's grounds for relief arise out of ineffective assistance of counsel, and therefore involve mixed questions of law and fact.  He then concludes broadly that the presumption of correctness of state court findings of fact does not apply at all.  (Magistrate Judge's Report and Recommendation at 12.)  The Court concludes that the Magistrate Judge went too far.  Although the Court need not defer to the ultimate findings on whether counsel provided ineffective assistance, as to underlying facts, such as the factual nature of evidence and the conduct of counsel, deference to the state court findings is still warranted so long as support exists in the record.

-24-

> courses of action, such as eliciting (or failing to elicit) evidence helpful to
> one client but harmful to the other.  If he did not make such a choice, the
> conflict remained hypothetical.

United States v. Hall, 200 F.3d 962, 965-66 (6th Cir. 2000), quoting, Thomas v. Foltz, 818 F.2d

476, 481 (6th Cir. 1987).

 Here, the only counsel choice on the record was his decision to offer Wadell's testimony.

However, it was the trial court's hearsay ruling, and not a choice of counsel, that dictated the

course of testimony.  As stated above, there was no constitutional violation in the exclusion of

Wadell's testimony.  The trial court's ruling obviated the conflict.  Counsel's performance was

not adversely affected because the evidence was deemed inadmissible by the court.

The Magistrate Judge speculates that alternative avenues to prove Elaine's violent

tendencies were available, but foreclosed because of the conflict.  There may have been police

records, medical records, or witnesses with direct knowledge of Elaine's conduct.  (Magistrate

Judge's Report and Recommendation at 18.)  Even the trial judge suggested calling Elaine

herself.  (Trial Tr. at 443.)  Trial counsel could have proffered such evidence in response to the

prosecution's objection to Wadell's testimony, but he did not do so.  The Magistrate Judge

speculates that counsel did not offer other evidence because of the conflict.  The law, however,

prohibits such speculation by requiring specific instances of counsel's impairment to appear in

the record.  An equally reasonable inference is that other evidence of Elaine's purported violent

tendencies was not offered because it either did not exist, or it did not support counsel's position.

The Magistrate Judge further speculates that the conflict could have hindered counsel in

investigating evidentiary avenues independent of Wadell's testimony.  The Court disagrees.  The

trial court's decision, and not any decision of counsel, foreclosed implicating Elaine.  Up until

-25-

the middle of trial, counsel had every intention of portraying Elaine as having violent tendencies. Counsel's investigation could not have been impaired because it would have been complete by then.

In addition, nothing foreclosed the Petitioner in the current proceedings from investigating and offering the very evidence speculated to exist by the Magistrate Judge to bolster the argument for an actual conflict.  Rule 6 of the Rules Governing Habeas Proceedings permits requests for additional discovery.  Rule 7 permits expansion of the record, which can encompass such discovery.  The Petitioner did not seek to use any of these procedures.

For the foregoing reasons, the Petitioner has not demonstrated, by reference to the trial record, the existence of an actual conflict that adversely affected counsel's performance.

## IV.  CONCLUSION

For the foregoing reasons, the state courts did not act in a manner contrary to, or involved an unreasonable application of, clearly established federal law pursuant to 28 U.S.C. 2254(d)(1). In addition, the state courts' decisions were not based upon unreasonable determinations of fact in light of the evidence pursuant to 28 U.S.C. 2254(d)(2).  The trial court's handling of the joint representation was consistent with federal law as set forth by the Supreme Court in Glasser, Sullivan, Holloway, and Wheat, and justified by the factual record.  In addition, the trial court's hearsay ruling did not rise to the level of a constitutional violation pursuant to Estelle v. McGuire and its progeny.  Therefore, Ground Two for relief lacks merit.

For the same reasons, neither trial counsel nor appellate counsel rendered ineffective assistance pursuant to Strickland, as modified by the conflict case law.  Trial counsel did not err and violate the Petitioner's "right to conflict-free counsel".  Such right was waived, or

-26-

alternatively, there was no conflict that adversely affected counsel's performance.  Relatedly, because trial counsel did not render ineffective assistance, there were no additional "meritorious issues" that could have been raised by appellate counsel.  Appellate counsel, therefore, did not render ineffective assistance, and the state appellate court did not err by not reopening the Petitioner's direct appeal.  Therefore, Grounds One, Three, and Four for relief lack merit.

Accordingly, the petition for writ of habeas corpus is DENIED.

The Court next must determine whether to issue a certificate of appealability ("COA").  An appeal may not be taken from a final order in a habeas corpus proceeding unless a circuit justice or judge issues a COA.  28 U.S.C. § 2253(c)(1).  The district court need not wait for a petitioner to file a motion before ruling on the COA.  Castro v. United States, 310 F.3d 900, 901 (6th Cir. 2002).   The COA should indicate which specific issues satisfy the requisite showing.  Powell v. Collins, 332 F.3d 376, 389 (6th Cir. 2003).

A COA may issue if the applicant has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  Such a showing is made upon demonstrating that:

> reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'

Slack v. McDaniel, 529 U.S. 473, 483-84 (2000), quoting, Barefoot v. Estelle, 463 U.S. 880, 893 n. 4 (1983).   The habeas court should determine whether reasonable jurists would find its decision "debatable or wrong".  Slack, 529 U.S. at 484.

Given the ambiguous state of the law with respect to the effect and application of conflict waivers, the Court concludes that reasonable jurists may differ on this issue.  Accordingly, the Court grants a certificate of appealability on the following issues: (1) whether the conflict waiver

bars further review of conflicts of interests, and (2) whether the Petitioner is entitled to relief because his trial counsel had an actual conflict of interest that adversely affected counsel's performance.  The Court also certifies that the Petitioner may proceed *in forma pauperis* on any appeal.  <u>See</u> 28 U.S.C. § 1915(a)(3).

　　　　　IT IS SO ORDERED.


Issued: August 22, 2006　　　　　　　　　　<u>　　*s/ John R. Adams*　　　　　　</u>
　　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE

-28-